ORIGINAL

HELANE L. MORRISON (CA Bar No. 127752)
JAMES A. HOWELL (CA Bar No. 92721)
KASHYA K. SHEI (CA Bar No. 173125)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2600
San Francisco, California 94104
Telephone: (415) 705-2500



UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

CV04-1837

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ATHENA P. DIAZ,

Defendant.

Case No. C

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE AND STATUTORY RELIEF

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## SUMMARY OF THE ACTION

1. Defendant Athena P. Diaz, while controller at Cutter & Buck, Inc. ("Cutter" or the "Company"), a Seattle-based sportswear manufacturer, assisted in a scheme by the Company's management to overstate earnings and revenues for the fiscal year ended April 30, 2000. In that year, Cutter improperly recorded $5.7 million in sales of product to three distribution companies. In fact, Cutter merely shipped the product to the companies to hold until Cutter could find customers to purchase the product, treating them as warehouses. Diaz knew that the transactions were warehousing arrangements and not sales. Diaz helped conceal the true nature of these transactions from the Company's auditors, board of directors and the public, by hiding invoices from the Company's auditors and making false and misleading entries in the Company's accounting records.



04-CV-01837-CMP

1 | U.S. Securities & Exchange Commission
44 Montgomery Street, Ste. 2600
San Francisco, CA 94104 (415) 705-2500

2. The Commission seeks a permanent injunction preventing Diaz from future conduct in violation of the federal securities laws and an order requiring her to pay a penalty.

### JURISDICTION AND VENUE

3. The Commission brings this action pursuant to Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [U.S.C. § 78u(d)]. This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act [15 U.S.C. §§ 78aa].

4. Defendant made use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the acts, practices, and courses of business and transactions alleged herein.

5. This district is an appropriate venue for this action under Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the transactions, acts, practices and courses of business constituting the violations alleged herein occurred within the Western District of Washington.

6. Assignment to the Court in Seattle is appropriate pursuant to Local Civil Rule 5(e)(1) because Defendant resides in Seattle, Washington.

### THE DEFENDANT

7. Athena P. Diaz, age 47, resides in Seattle, Washington. Diaz joined Cutter in 1991 as an accounting manager and was promoted to controller in or around 1999. Diaz was terminated in August 2002 following an internal investigation by the Company.

### THE COMPANY

8. Cutter & Buck Inc. is a Washington corporation headquartered in Seattle, Washington. The Company designs and distributes upscale sportswear. The Company's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act, and has been quoted on the Nasdaq Stock Market since the Company's 1995 initial public offering. Cutter operates on a fiscal calendar that ends on April 30.

### ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

9. As Cutter neared the close of its 2000 fiscal year (ended April 30, 2000), it faced a potential shortfall in revenue as its product sales declined. This shortfall was exacerbated by Cutter's practice of "early shipping." Since at least 1995, Cutter had a practice of shipping products in advance

of the shipment date requested by the customer. By 2000, the practice had grown substantially, with Cutter's "early shipping" several million dollars in products each quarter. As a consequence of essentially "borrowing" from the next quarter's sales, Cutter began each quarter with a sales deficit. This was particularly problematic going into the fourth quarter of fiscal year 2000.

10.   During April 2000, in order to conceal the revenue shortfall, a vice president of sales on behalf of Cutter negotiated deals with three distributors under which Cutter would ship them a total of $5.7 million in products. None of the three distributors had the financial ability to pay for the volume of products Cutter shipped to them. Nor, under their agreements with the Company, did the distributors have the ability or right to sell the products without Cutter finding customers for them. In addition, the vice president of sales assured the distributors that they did not have to pay for the product until Cutter sold the merchandize and Cutter's customers paid the distributors for the items. In effect, these distributors acted as warehouses for goods that had been consigned to them by Cutter.

11.   At the very end of the month, in the last days of Cutter's fiscal year, Cutter shipped approximately $5.7 million of goods to these distributors. Cutter improperly treated the shipments as sales and recognized revenue of $5.7 million. In filings with the Commission and statements to the public, the Company reported revenue of $54.6 million for the fourth quarter and $152.5 million for the fiscal year.

12.   Under Generally Accepted Accounting Principles ("GAAP"), it was improper for Cutter to recognize revenue on the distributor shipments because Cutter had a continuing obligation to find customers for the products. Revenue recognition was also improper because the Company had no reasonable assurance that the distributors would pay for the products, and such payment was contingent on Cutter's ability to find customers for the goods. By improperly including the distributor deals in its reported revenue, Cutter overstated its revenue by approximately 12% for the fourth quarter and approximately 4% for the fiscal year.

13.   As controller, Diaz had an obligation to ensure that the Company recorded revenue in accordance with GAAP. This obligation included taking affirmative steps to correct any improper accounting treatment, such as the treatment for the $5.7 million in consignment sales.

14. Diaz knew or was reckless in not knowing that the distributor shipments were not sales and not revenue under GAAP. Specifically, Diaz knew that the Company had similar warehouse transactions in 1999, where the distributor had no obligation to pay and that it was Cutter's responsibility to sell the products to the ultimate customer. In addition, for the 2000 distributor sales, Diaz knew or had reason to believe that the distributors did not have the financial ability to pay for the products they were supposedly purchasing from Cutter.

15. In or about April 2000, Diaz failed to take steps to correct the improper accounting treatment for the Company's sales to the three distributors. Diaz not only failed to take remedial action, but she actively sought to conceal the consignment sales from Cutter's auditors. In their annual audit for fiscal year April 30, 2000, Diaz deliberately withheld the three distributor invoices from the auditors. Diaz's conduct aided Cutter in its fraudulent overstatement of revenue in its Form 10-K for fiscal year ended April 30, 2000, filed with the Commission and disseminated to the public.

16. By late 2000, Cutter's sales force failed to deliver enough customers to the three distributors to fill the orders and by late 2000 most of the inventory held by the distributors remained unsold. By the end of April 2001, the distributors returned approximately $3.8 million of unsold products to Cutter, and the Company credited the returns against fiscal 2001 sales.

17. Nearing the close of fiscal year ended April 30, 2001, the Company's chief financial officer directed Diaz to record the returns in the Company's accounting records by dividing them among multiple sales divisions. The $5.7 million in revenue from the original sales to the distributors had been recognized in the accounts of Cutter's corporate sales division and, thus, the returns should have been credited solely to this division. Diaz knew that the purpose of dividing the returns among multiple divisions was to hide the consignment sales from the Board and the auditors. Diaz also knew that dividing the returns among multiple divisions was improper and in violation of GAAP. Nevertheless, Diaz divided the returns among multiple channels. By so doing, Diaz aided Cutter in not having to publicly acknowledge that Cutter had erroneously recorded the revenue in fiscal 2000. In addition, this resulted in the material misstatement of false financial information in Cutter's Form 10-K for fiscal year ended April 30, 2001, in that it gave the public a false impression of the Company's growth of its various divisions.

18. In or around late July 2002, following a change in management, Cutter's new management learned about the improper distributor transactions. The Company began an internal investigation in early August 2002. Diaz was terminated shortly thereafter. On August 12, 2002, the Company announced that it would restate its financial statements for fiscal years 2000 and 2001. The announcement caused Cutter's stock price to drop from $4.02 to $3.44, or 14%, the following day.

19. In October 2002, in its Form 10-K for the fiscal year ended April 30, 2002, the Company restated its audited financial statements for fiscal years 2000 and 2001. The Company reported that the restatement resulted from the improper recognition of revenue for shipments to distributors in April 2000, as well as from the Company's practice of shipping products in advance of the customer's requested shipment date.

**FIRST CLAIM FOR RELIEF**
**Aided and Abetted Violations of Section 10(b)**
**of the Exchange Act and Rule 10b-5.**

20. The Commission realleges and incorporates by reference Paragraphs 1 through 19 above.

21. During the relevant period, Cutter and Defendant, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of the mails, with scienter:

    (a) employed devices, schemes, or artifices to defraud,

    (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

22. Defendant knowingly provided substantial assistance to Cutter's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

23. Defendant has aided and abetted, and unless restrained and enjoined, will continue to violate and to aid and abet, violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF
### Aided and Abetted Violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1

24. The Commission realleges and incorporates by reference Paragraphs 1 through 19 above.

25. Cutter filed with the Commission annual reports on Form 10-K for the fiscal years ended April 30, 2000, and April 30, 2001, that contained untrue statements of material fact and omitted to state material information required to be stated therein or necessary in order to make the required statements made, in the light of the circumstances under which they were made, not misleading, in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 under the Exchange Act [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

26. Defendant knowingly provided substantial assistance to Cutter's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 under the Exchange Act [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

27. Defendant aided and abetted, and unless restrained and enjoined, will continue to aid and abet, violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 under the Exchange Act [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

## THIRD CLAIM FOR RELIEF
### Aided and Abetted Violations of Section 13(b)(2)(A) of the Exchange Act

28. The Commission realleges and incorporates by reference Paragraphs 1 through 19 above.

29. Cutter, by engaging in the conduct described above, failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of the assets of the Company, in violation of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

30. Defendant knowingly provided substantial assistance to Cutter's violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

31. Defendant aided and abetted, and unless restrained and enjoined, will continue to aid and abet, violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

## FOURTH CLAIM FOR RELIEF
### Aided and Abetted Violations of Section 13(b)(2)(B) of the Exchange Act

32. The Commission realleges and incorporates by reference Paragraphs 1 through 19 above.

33. Cutter, by engaging in the conduct described above, failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable reassurances that:

   (a) transactions are executed in accordance with management's general or specific authorization,

   (b) transactions are recorded as necessary (i) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (ii) to maintain accountability for assets,

   (c) access to assets is permitted only in accordance with management's general or specific authorization; and

   (d) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

34. Defendant knowingly provided substantial assistance to Cutter's violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

35. Defendant aided and abetted, and unless restrained and enjoined, will continue to aid and abet, violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

## FIFTH CLAIM FOR RELIEF
### Violations of Section 13(b)(5) of the Exchange Act

36. The Commission realleges and incorporates by reference Paragraphs 1 through 19 above.

37. By engaging in the conduct described above, Defendant knowingly circumvented or knowingly failed to implement Cutter's system of internal accounting controls or knowingly falsified Cutter's books, records and accounts in violation of Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)].

38. Defendant has violated and, unless restrained and enjoined, will continue to violate Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)].

# SIXTH CLAIM FOR RELIEF
## Violations of Rule 13b2-1 of the Exchange Act

39. The Commission realleges and incorporates by reference Paragraphs 1 through 19 above.

40. By engaging in the conduct described above, Defendant falsified or caused to be falsified Cutter's books, records and accounts in violation of Rule 13b2-1 under the Exchange Act [17 C.F.R. § 240.13b2-1].

41. Defendant has violated and, unless restrained and enjoined, will continue to violate, Rule 13b2-1 under the Exchange Act [17 C.F.R. § 240.13b2-1].

# SEVENTH CLAIM FOR RELIEF
## Violations of Rule 13b2-2 of the Exchange Act

42. The Commission realleges and incorporates by reference Paragraphs 1 through 19 above.

43. By engaging in the conduct described above, and in connection with an examination of the financial statements of Cutter and the preparation and filing of statements and reports with the Commission, Defendant, directly or indirectly, made or caused to be made materially false or misleading statements to accountants and omitted to state, or caused another person to omit to state to accountants, material facts necessary in order to make statements made to the accountants, in light of the circumstances under which such statements were made, not misleading.

44. Defendant has violated and, unless restrained and enjoined, will continue to violate, Rule 13b2-2 under the Exchange Act [17 C.F.R. §240.13b2-2].

# PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

I.

Enjoin Defendant from aiding and abetting violations of Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Rules 10b-5, 12b-20 and 13a-1 under the Exchange Act and violating, directly or indirectly, Section 13(b)(5) of the Exchange Act and Rules 13b2-1 and 13b2-2 thereunder;

II.

2   Order Defendant to pay civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], with the amount to be determined at a later date by the parties or if the parties cannot agree by the Court;

III.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

IV.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: August 23, 2004                Respectfully submitted,

                                      *signature*
                                      He[J]ane L. Morrison
                                      James A. Howell
                                      Kashya K. Shei

                                      Attorneys for Plaintiff
                                      SECURITIES AND EXCHANGE COMMISSION
                                      44 Montgomery Street, Suite 1100
                                      San Francisco, California 94104
                                      Telephone: (415) 705-2500
                                      Fax: (415) 705-2501
                                      e-mail: howellj@sec.gov